McFarland, J.,
delivered the opinion of the Court*
This action was brought in the name of the State for the use of G. T. Tarwater, against A. J. Wheeler *394 and his securities, upon his official bond as notary public.
The ground of the action is, that a note payable at a bank in Memphis, and made there by K. G. Clark, payable to his own order, and by him endorsed to Jacob Weller, and by Weller endorsed to the plaintiff' Tar water — was by him endorsed and delivered to the Bank of Memphis for collection, and that the same was by the bank placed in the hands of Wheeler, as notary, to make demand for payment, and to protest and to give notice so as to charge the endorsers. The demand and protest were duly made, and Wheeler certified that he made diligent search and inquiry, but was unable to find Clark and Weller — and therefore did not give them personal notice — whereas in fact, Weller was at the time in Memphis, had a well known residence there, and could have been readily found upon inquiry; and the certificate that ' diligent search and inquiry had been made was untrue. That suit was brought against Weller, the only solvent party, and he was discharged for want of notice - of the dishonor of the paper. Upon this ground a recovery was sought against Wheeler and his securities, for this failure to discharge his duties as notary, whereby the debt was lost to the plaintiff — a jury was waived and the court gave judgment for the plaintiff — and the defendants appealed in error. Several questions of evidence were made, but the vital question in the case, and one that must necessarily be decided is, Whether the sureties are liable upon the bond for this failure of the notary to discharge his duty. The condition *395 of tbe bond is that Wheeler “should faithfully discharge his duties as notary.” This raises the question Whether it was a part of the official duty of' the notary to give notice of the non-payment in a case like this, or was his act in this respect merely as an agent of the holder.
It seems well settled that at common law, formal protest and notice by a notary are only necessary upon foreign bills and notes, and not upon inland bills and 'notes; that although as to these latter notices it was required to charge the endorser, that this need not be upon a final protest by a notary, and that when a notary in such cases makes the protest and gives the notice, giving the notice is not an official act — but in this the notary acts as the agent of the owner: See Story on Prom. Notes, sec. 297, note 2; citing Nicols v. Webb, 8 Wheaton; Morgan v. Vandugen, 2 Johnson N. Y. R., 202; 9 Yerg., 253.
The question is, whether this is changed by our statutory provisions.
The chapter of the Code upon this subject provides for the appointment of notaries public, their commissions, bonds for the faithful discharge of their duties, oath of office, etc.
There is nothing, however, in terms defining their duties. It is provided, however, that “the allegations,, protestations and other instruments of publication made and done by any notary public under his seal, shall be received in evidence;” and further, that “in an action against the drawer or endorser of a bill of exchange or any negotiable paper, protested for non-acceptance *396 or non-payment, the notary’s certificate either in or on the protest, that he gave notice of the dishonor of the paper by the drawer or indorsee, shall be primet facie evidence of the fact of such notice:” Sec. 1800. “ If such certificate be not made in or on the protest, but an entry to that effect be made in the notary’s record book of protests, and the notary be dead, then said book or a sworn copy thereof shall be pri-ma facie evidence,” &c., 1801. “A fee of one dollar and no more is allowed to a notary public for recording, in a well-bound book to be by him kept for that purpose, each of his attestations, protestations and other instruments of publicationCode, 1803. These provisions are taken from the acts of 1820 and 1835.
Although these provisions do not in express terms say that it shall be the official duty of the notary to give the notice, yet they evidently regard the act as an official one, his certificate, or entry upon a book is made evidence, and he is required to keep a book for the purpose of making such entries.
All this is inconsistent with the idea that such acts are but the acts of a private agent. He is required by law to keep a book of record, is allowed to charge and collect fees, and his certificate or his book is evidence. This evidently contemplates that when the act is performed by the notary, that it shall have the effect of an act performed by a public officer, under his official oath, and does not stand upon the footing of an act of a mere private agent.
It is true that the case of Barr et als. v. Marsh, 9 Yerg., 253, was decided after the passage of the *397 act of 1820, but probably arose before the act of 1835; and, in this case,- the notary is spoken of as an agent of the holder; but the direct question was not made in that case, nor does it seem to have been considered. The question is one of a great deal of practical importance in commercial communities. From necessity, in many cases, and from almost universal custom, the entire matter of protest and notice is entrusted to notaries public.
The rights of the parties, in a great degree, depend upon the manner in which he discharges these duties. He is not selected because of personal confidence or trust, but because of his official position, which gives his acts the effect of official acts.
His bond was certainly intended to secure parties thus intrusting business to his bands against loss from his failure to discharge his duty; and we think by a fair construction of these laws, the. act must be regarded as official, and his failure to discharge the duty a breach of his bond.
The record shows that the plaintiff was permitted to prove against the defendants’ objection, that upon the trial of the case of Tarwater v. Weller upon the note, that Wheeler was examined as a witness, and proved in substance that he only made inquiry of two persons, as to the residence of Weller, and the information they gave him was not definite. This was clearly erroneous. Wheeler’s declarations after the act complained of, as to what he had done, are not admissible against his sureties: Bank v. White, at the present term. A jury was waived in this case, and *398 the entire matter submitted to the judge. Shall we in such case reverse the judgment and remand the case for a new trial of the issues? Where the trial of the facts is by a jury, this must be done of necessity, where there is error of law in the admission of' testimony; but the case is before us precisely as it was before the court below, and the argument is that this court should determine the facts as the Circuit Judge should have determined them, and render the judgment he should have rendered, and if illegal evidence has been heard, to reject this and determine the cause upon the evidence that remains. This, we think, is the correct view; and rejecting the illegal evidence in the record, enough remains to show, that the defendant Wheeler did not use due diligence to ascertain the residence of Weller and give the notice. He had. a residence in Memphis at the time and was at home. This residence could have been ascertained upon reasonable enquiry.
It .further appears on account of this failure of Wheeler to give the notice, Weller was discharged from liability upon his endorsements and Tarwater lost his debt. We therefore affirm the judgment.